PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 05-1088

DAVID STEVENSON; MICHAEL MANLEY;
*MICHAEL L. JONES,

Appellants

v.

THOMAS CARROLL, Warden

*Reinstated per clerk's order of 08/09/05
_____

On Appeal from the United States District Court
for the District of Delaware
District Court No.: 04-cv-139
District Judge: The Honorable Kent A. Jordan
_____

Argued June 4, 2007

Before: SMITH, COWEN, and SILER, *Circuit Judges**

_____

*The Honorable Eugene E. Siler, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

(Filed: July 30, 2007)

Leon F. DeJulius, Jr. (Argued)
Jones Day
500 Grant Street, 31st Floor
Pittsburgh, PA 15219
*Counsel for Appellants*

Richard W. Hubbard (Argued)
Department of Justice
820 North French Street
Carvel Office Building
Wilmington, DE 19801
*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge*.

    Three detainees in the Delaware Correctional System–David Stevenson, Michael Manley, and Michael L. Jones–filed an action under 42 U.S.C. § 1983 against Warden Thomas Carroll, alleging violations of their substantive and procedural due process rights. The District Court dismissed their complaint. On appeal, they assert that their allegations of placement in restrictive confinement state valid substantive and

procedural due process claims sufficient to survive a motion to dismiss. We agree, and remand the case to the District Court.

I.

At the time of their complaint, Stevenson and Manley were awaiting resentencing. Both had been convicted and sentenced to death in January 1997, but their sentences were vacated and remanded on or about May 30, 2001. At that time, they were moved off death row, and into the Security Housing Unit ("SHU"). Stevenson was moved from the SHU to a less restrictive pre-trial facility in December 2003, but was returned to the SHU in January 2004. Neither one of them received a hearing or explanation for their transfers into the SHU. They were both subsequently re-sentenced to death on February 3, 2006.

Jones was awaiting trial at the time of the complaint. Following a disruption at Gander Hill Prison in Wilmington, Delaware, he and several other inmates were moved to the SHU on or about February 19, 2003. Jones asserts that, like Stevenson and Manley, he was not afforded an explanation or hearing regarding his transfer into more restrictive housing. He does, however, state that he was alleged to have been involved in the riot at Gander Hill. Jones was subsequently found guilty of first-degree murder and sentenced to life imprisonment on September 16, 2005.

The appellants seek relief in the form of a transfer back

into the general prison population, monetary damages, and the establishment of a system of review for transfers of pretrial detainees into the SHU.[1]

The Warden filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which was granted on December 7, 2004. The District Court held that the detainees' transfer out of the general prison population into the SHU for nonpunitive reasons was within the scope of the prison officials' authority with respect to prison management. In its ruling, the District Court relied upon *Sandin v. Conner*, 515 U.S. 472 (1995). The plaintiffs appealed from this order on January 4, 2005.[2] Review of a dismissal of a complaint under Rule 12(b)(6) is plenary. *Lake v. Arnold*, 112 F.3d 682, 684-85 (3d Cir. 1997).

II.

Stevenson, Manley, and Jones present two arguments as

---

[1] Stevenson and Manley are now on death row, and Warden Carroll indicates that Jones is now housed in the part of the SHU reserved for sentenced inmates. Accordingly, their request for injunctive relief on the grounds that they are improperly confined pretrial detainees is moot. The other two forms of relief they seek continue to be viable.

[2] The District Court had subject matter jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

to why their complaint should have survived the motion to dismiss. First, they argue that they have sufficiently asserted a liberty interest in being free from punishment prior to imposition of sentence. Second, they assert that they should have been afforded notice of their transfer and an opportunity to respond. The Warden disputes the sufficiency of their substantive and procedural due process claims, arguing that they have made only conclusory allegations regarding punishment and have no cognizable liberty interest in being housed in the general prison population.

In support of his contention that the complaint made only conclusory statements regarding punishment, the Warden looks to *Evancho v. Fisher*, 423 F.3d 347, 351-53 (3d Cir. 2005). The opinion in *Evancho*, however, offers the Warden no support. The holding of *Evancho* is that the amended complaint of a state employee filed against the state attorney general alleging violations of the Pennsylvania Whistleblower Law and her civil rights failed to meet the liberal pleading requirement of Federal Rule of Civil Procedure 8(a). Evancho admitted that she did not have evidence of the involvement of one of her named defendants. *Id.* at 350. The complaint here is significantly different in that it does support a claim for substantive due process violations. As the Warden acknowledges, the complaint alleges that "Plaintiffs weren't given an explanation for the punitive move." This express reference to punishment is supported by numerous references in the complaint to lengthy stays in isolation with prisoners who had disciplinary problems or who were in protective custody, and the imposition of

5

additional hardships that are not shared by the general prison population. The reasonable inference from these factual allegations is that appellants were impermissibly punished. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) ("We accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them."). Liberal pleading dictates that, particularly in the context of a pro se complaint, such allegations be deemed sufficient. *Erickson v. Pardus*, --- U.S. ---, 127 S. Ct. 2197, 2200 (2007); *Gibbs v. Roman*, 116 F.3d 83, 86 (3d Cir. 1997).

    To be sure, there are reasonable inferences apart from punishment that could be drawn from the complaint as explanation for the appellants' confinement. Jones notes that he was alleged to have been a participant in a riot at the Gander Hill detention facility. If this allegation is true, it is entirely possible that his relocation to the Smyrna facility's SHU was for disciplinary reasons rather than for impermissible retaliation or punishment. Likewise, Stevenson and Manley admit that they had been sentenced to death, but that only their sentences had been vacated. Death sentences are available in Delaware only for offenses of first-degree murder. *See* 11 DEL. CODE §§ 636, 4209(a). Accordingly, the Warden's assertion that Stevenson and Manley were housed in the SHU because they were charged with violent offenses is also a legitimate inference to be drawn from the complaint. However, the fact that such inferences may be drawn is proof that the dismissal was premature. The appellants have met their obligation to provide grounds for their entitlement to relief by presenting factual allegations sufficient

to raise their right to relief above a speculative level. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1964-65 (2007).

The complaint also alleges sufficient facts to make out a claim for relief based on procedural due process. In addition to the list of deprivations the plaintiffs suffered, the complaint states that they were not afforded "all the rights of normal pre-trial [detainees]," and that the "standard practice at Delaware Correctional Center" of returning those whose sentences had been vacated to the general prison population was not followed. These allegations do not explicitly state the nature of the appellants' alleged liberty interest, but they provide an adequate framework for the inquiry. *See, e.g.*, *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1402 (3d Cir. 1991) (requiring "facts in [the] complaint from which we could infer that [plaintiff] had a liberty or property interest").

The complaint details the differences between the conditions they encountered in the SHU and those encountered by regular pretrial detainees. It evinces the appellants' contention that they were improperly housed in the SHU without explanation or an opportunity to contest their placement. The complaint states that the appellants wrote to Warden Carroll and his employees requesting an explanation for their confinement in the SHU, but received no response. The reasonable inference to be drawn from these allegations is that the appellants assert a liberty interest in being free from punishment while awaiting sentencing and in not being held in the SHU indefinitely. The

7

plaintiffs specifically requested relief in the form of "a system to inform inmates why they were put into isolation, who made the decision to put them in isolation, and a chance to appeal the decision to a non-partisan official." They also requested that the prison "[m]ake procedural safeguards." The allegations in the complaint sufficiently raise the appellants' claim that their procedural due process rights were violated.

### III.

#### A.

Although both Stevenson and Manley had been convicted at the time of their complaint, they are classified as pretrial detainees for purposes of our constitutional inquiry. *See Cobb v. Aytch*, 643 F.2d 946, 962 (3d Cir. 1981) ("The right to remain at liberty continues until a court pronounces a judgment of sentence, although after a jury has pronounced a guilty verdict the court may insist upon greater assurance that a defendant will submit to sentence."); *see also Fuentes v. Wagner*, 206 F.3d 335, 341 (3d Cir. 2000). Their initial sentences had been vacated and they were awaiting resentencing at the time of their complaint and for the duration during which they allege they were subjected to due process violations. Jones was awaiting trial at the time of the complaint. The Warden does not contest the status of the appellants as pretrial detainees for purposes of this appeal.

#### B.

With respect to the substantive due process claims of punishment, in *Bell v. Wolfish*, the Supreme Court established the principle that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." 441 U.S. 520, 535-36 (1979). The *Bell* Court mandated a pragmatic approach to determining what constitutes punishment, and formulated the "reasonable relationship" test for determining whether a restriction is punitive. *Id.* at 539 ("[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment.'"). To aid courts in applying this test, the *Bell* opinion looked to the test in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963) for factors that courts might use as guideposts in distinguishing restrictions that are punitive from those that are not:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment–retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry....

*See also Bell*, 441 U.S. at 537-38. However, the Court cautioned that "[a]bsent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* at 538 (quoting *Kennedy*, 372 U.S. at 168-69). Thus, "if a restriction or condition is not reasonably related to a legitimate goal–if it is arbitrary or purposeless–a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* at 539.[3]

---

[3]In a footnote, the Court exhorted that

> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."

*Id.* at 540 n.23 (citations omitted).

Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in *Wilson v. Seiter*, 501 U.S. 294 (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* at 298. The Supreme Court did not abandon this bipartite analysis in *Bell*, but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective. *See Bell*, 441 U.S. at 538-39 & n.20. Thus, we agree with the summary of the holding of *Bell* in *Rapier v. Harris*:

> [A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.

172 F.3d 999, 1005 (7th Cir. 1999).

Because the District Court could not make either an objective inquiry into the severity of the deprivations or a subjective inquiry into the mental state of the officials at the motion to dismiss stage, the dismissal was improper. One reasonable inference from the allegations in the complaint of

disparate treatment of prisoners is that, at a minimum, the appellants' confinement in the SHU was arbitrary. *See id.* at 304 (allowing collective examination of conditions of confinement); *see also Bell*, 441 U.S. at 542 (stating that confining pretrial detainees "in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment"). Stevenson and Manley assert that they were not treated in the same manner as other similarly situated inmates. Jones' allegations suggest that one of the other prisoners who was alleged to have been involved in the riot at Gander Hill was released from the SHU in July 2003, and two others were moved into the general prison population in August 2003. These allegations intimate a degree of as yet unexplained arbitrariness in the procedures regarding placement in the SHU.

In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution. In *Hubbard v. Taylor*, 399 F.3d 150 (3d Cir. 2005), we explained that "[o]ur inquiry into whether given conditions constitute 'punishment' must therefore consider the totality of circumstances within an institution." *Hubbard*, 388 F.3d at 160. Appellants assert that, as compared to the conditions for the general prison population, housing in the SHU is significantly more restrictive. The complaint draws specific, item-by-item comparisons between the restrictions in the SHU and those in the general prison population. The allegations in the complaint raise an inference of impermissible punishment that precludes granting a motion

to dismiss and may warrant further discovery.[4]

When warranted, such discovery need not be extensive. In situations such as this, where the allegations of punishment are coextensive with the allegations that form the basis for the procedural due process claim, it will generally be sufficient for the prison officials to submit affidavits to show that the classification was appropriate based on reasonable prison management concerns. While district courts have discretion to manage their cases, such affidavits alone will often be adequate to resolve the punishment inquiry. Although the substantive and

---

[4]The able District Judge erroneously relied upon *Sandin v. Conner*, 515 U.S. 472 (1995) for the proposition that the institutional decision to place appellants in the SHU "is exactly the type of decision the Supreme Court noted when it held that federal courts should defer to prison officials with respect to managing the 'ordinary incidents of prison life.'" Appellants' pretrial detainee status necessitates a more nuanced approach. The focus in *Sandin* was on state-created liberty interests regarding "freedom from restraint which, while not exceeding *the sentence* in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484 (emphasis added). The Court emphasized that its holding was driven by "the range of confinement to be normally expected for one serving an indeterminate term," *id.* at 487, and the "expected perimeters of the sentence imposed by a court of law," *id.* at 485. Several courts of appeals, including this one, subsequently concluded that "*Sandin* does not apply [to pretrial detainees]. *Sandin* concerned punishment of a sentenced prisoner, and therefore required a completely different analysis." *Fuentes*, 206 F.3d at 342 n.9; *see also Benjamin*, 264 F.3d at 188.

procedural due process evaluations are distinct, a showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or purposeless, will typically foreclose the substantive due process inquiry.

C.

Appellants assert that they were denied notice of their transfer and an opportunity to respond. The Supreme Court has repeatedly stated that "[t]he core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). Appellants have sufficiently pled facts to show that they were housed in the restrictive conditions of the SHU without any procedural protections. Although pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in the SHU without explanation or review of their confinement. This result is compelled by our holding in *Shoats v. Horn*, 213 F.3d 140 (3d Cir. 2000). In our discussion in *Shoats* focusing on the liberty interests at stake, we explained that "we have no difficulty concluding that eight years in administrative custody, with no prospect of immediate release in the near future, is 'atypical' in relation to the ordinary incidents of prison life." *Id.* at 144. Unlike appellants, Shoats was a sentenced inmate who received periodic review of his status, to which he was permitted to respond. *Id.* at 145-46. As explained above, the protections due to sentenced inmates provide a floor for what pretrial detainees may expect.

In determining what procedural protections are adequate, we are guided by the tenet that "[d]ue process is flexible and

14

calls for such procedural protections as the particular situation demands. Accordingly, resolution of the issue whether ... administrative procedures provided ... are constitutionally sufficient requires analysis of the governmental and private interests that are affected." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (citations omitted). Thus, the substantive liberty analysis is integral to the inquiry into the process due. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 560 (1974) ("Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." (citations omitted)); *Benjamin v. Fraser*, 264 F.3d 175, 190 (2d Cir. 2001).

Taking into account both the private interests of the detainees and the governmental function involved, it becomes clear that the process required for administrative transfers of pretrial detainees need not be extensive. Detainees have a liberty interest in not being subjected to punishment for the crime with which they have been charged until after they have been convicted and sentenced, but the governmental interest in maintaining prison security for the duration of their detention is substantial. *Bell v. Wolfish*, 441 U.S. 520, 540 (1979) ("The Government also has legitimate interests that stem from its need to manage the facility in which the individual is detained.").

Prison officials must provide detainees who are transferred into more restrictive housing for administrative purposes only an explanation of the reason for their transfer as well as an opportunity to respond. This level of process comports with the Supreme Court's holding in *Hewitt v. Helms*, 459 U.S. 460 (1983) that the removal of a sentenced inmate

15

from the general prison population and his transfer into administrative segregation requires at least a minimal degree of process. The Court explained that "the Due Process Clause requires only an informal nonadversary review of evidence ... in order to confine an inmate feared to be a threat to institutional security to administrative segregation." *Id.* at 474. This informal nonadversary review is satisfied when an inmate receives "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Id.* at 476. The Court further explained that "[t]he proceeding must occur within a reasonable time following an inmate's transfer...." *Id.* at 476 n.8.

The degree of process required varies depending on the reason for the transfer, with greater process accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons. *See Mathews*, 424 U.S. at 334. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense," and "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Id.* at 564. As the Second Circuit has noted, "the procedures required by *Wolff* apply if the restraint on liberty is imposed for disciplinary reasons; if the restraint is for 'administrative' purposes, the minimal procedures outlined in *Hewitt* are all that is required." *Benjamin*, 264 F.3d at 190; *see also Rapier v. Harris*, 172 F.3d 999, 1005-06 (7th Cir. 1999). Due to the unique exigencies of prison management, and in accordance with *Hewitt*, the minimal exchange of paperwork our holding will occasion need not occur prior to the transfer of a

16

detainee.

Jones' complaint suggests that his transfer was occasioned by his alleged participation in a prison riot, which may necessitate a higher level of procedure. Stevenson and Manley allege only that they were transferred without explanation. The Warden stated in an affidavit attached to his memorandum in support of the motion to dismiss that Jones' transfer to the SHU was due to the fact that he had "very serious pending charges" and "a number of inmate disciplinary infractions." The Warden also stated that Stevenson and Manley were housed in the SHU based on their "potential ... to again receive a sentence of death." Accordingly, the District Court should examine the asserted purposes for appellants' detentions, and determine whether sufficient process has been afforded.

In considering the asserted rationale for placing pretrial detainees in restricted housing, courts should be mindful of our pronouncement in *Shoats*: "Shoats could conceivably be held in administrative custody merely because his prior crimes reasonably foreshadow future misconduct." *Shoats*, 213 F.3d at 146. This consideration is consistent with the Supreme Court's emphasis on the principle that "we are unwilling to substitute our judgment on these difficult and sensitive matters of institutional administration and security for that of 'the persons who are actually charged with and trained in the running' of such facilities." *Block v. Rutherford*, 468 U.S. 576, 588 (1984) (quoting *Bell*, 441 U.S. at 562).

In *Bell*, the Supreme Court instructed that if there is a reasonable relationship between the particular condition or restriction of pretrial detention and a legitimate governmental

17

objective, then that condition, "without more," does not infringe upon a detainee's constitutional rights. *Bell*, 441 U.S. 539. In this case, at the motion to dismiss stage, it is not possible to discern whether the relationship between the appellants' detention in the SHU and a legitimate governmental objective is reasonable. Such a determination may be properly made on a motion for summary judgment, at which point the Warden must come forward and demonstrate the governmental objective in question.

### IV.

Warden Carroll asserts that he is entitled to qualified immunity on the grounds that even if the facts alleged show a violation of a constitutional right, that right was not clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). The District Court dismissed the complaint on the merits and therefore did not reach the issue of qualified immunity. It is not necessary for us to resolve this question now. We leave it to the District Court to consider qualified immunity on remand.

### V.

Under the liberal construction of complaints afforded to pro se prisoner plaintiffs, we find that the complaint challenges the reasonable relationship of the appellants' confinement to a legitimate government objective and alleges impermissible punishment of pretrial detainees. The complaint alleges deprivations suffered by the appellants and compares their living

conditions to those of the general prison population. The appellants asserted that they had sought, but been refused, an explanation for their placement in the SHU. Accordingly, the complaint alleges sufficient facts to survive the motion to dismiss. We will vacate the dismissal of the complaint and remand the case to the District Court.